```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              )
       Plaintiff,             )
                              )
       v.                     )  Docket No: 05 CR 10223-NMG
                              )
SIR DAWAYNE HICKS             )
                              )
       Defendant,             )
```

DEFENDANT'S SENTENCING MEMORANDUM  AND REQUEST
FOR A SENTENCE BELOW THE ADVISORY GUIDELINES

The defendant, Sir Dawayne Hicks, submits this sentencing memorandum in anticipation of his sentencing scheduled for October 3, 2007. The defendant concedes that the career offender provisions of the advisory Federal Sentencing Guidelines apply[1]. However, pursuant to Title 18 U.S.C. section 3553 (a) the defendant asserts that a sentence of imprisonment substantially lower than that suggested by those provisions is sufficient, but not greater than necessary, to effectuate the purposes of sentencing.

---

[1] The defendant has previously objected to the application of the career offender criminal provisions in his objections to the pre-sentence report.

**FEDERAL SENTENCING GUIDELINE CALCULATION**

On June 27, 2007 the defendant pled guilty to a one count indictment that alleged Distribution of Cocaine Base, in violation of 21 U.S.C. § 841(b). The charge carries a statutory carries a statutory minimum sentence of five (5) years imprisonment and a statutory maximum sentence of forty (40) years imprisonment.  The government filed an Information pursuant to 21 U.S.C. § 851(a)(1) putting the defendant on notice of the applicability of 21 U.S.C. § 841(b).

The Pre-Sentence Report (PSR) correctly calculated the base offense level pursuant to U.S.S.G. 21 § 2D1.1.C(7) at 26.  Pursuant to U.S.S.G. § 3E1.1(a) and (b) there is a three point reduction for the defendant's Acceptance of Responsibility.  This results in a final Base Offense Level of $23^2$.  The PSR placed the defendant in Criminal History Category VI.  The calculated guideline sentence range is 92-115 months imprisonment.

The probation department has asserted that the career offender provisions of the U.S.S.G. § 4B1.1 are applicable. Section 4B1.1 directs that the offense level is calculated according to the offense statutory maximum. Pursuant to the

---

[2] The defendant fully expects that the United States Congress is going to adopt recommendations made to it by the United States Commission in May 2007 that will decrease the Base Offense Level for Cocaine Base offenses.

2

enhancement provisions of 21 U.S.C. 841 (b)(1)(b) the statutory maximum sentence is life imprisonment[3]. The corresponding base offense level becomes a 37. The defendant is still entitled to the three point deduction for his Acceptance of Responsibility. Under this scenario the Base Offense Level is 34.

Under the career offender provision the defendant is automatically placed into criminal history category VI. The adjusted guideline sentence is 262 to 327 months imprisonment.

### A SENTENCE OF IMPRISONMENT SUBSTANTIALLY LOWER THAN THE GUIDELINE CALCULATION IS WARRANTED

The defendant does not dispute (excepting his previously noted objections) the guideline calculation as determined by the probation department. However, while the court must calculate and consider the guidelines, they are merely advisory and only one of several statutory factors the court must consider when determining an appropriate sentence. United States v. Booker, 543 U.S. 220 (2005). A sentence imposed in conformity with the guidelines is not presumed reasonable merely because it falls within the

---

[3] The defendant timely filed a written objection to the use of prior convictions for the purposes of sentence enhancement and would hereby renew that objection.

3

guidelines. <u>United States v. Jimenez-Beltre</u>, 440 F3d. 514 (1st Cir. 2006).

Under the factors set forth in 18 U.S.C. § 3553(a)(2) the defendant submits that a sentence of imprisonment of ten (10) years followed by eight (8) years of supervised release to be served forthwith and concurrent with the Commonwealth of Massachusetts state court sentence the defendant is currently serving is sufficient but not greater than necessary to achieve the statutory objectives. The defendant submits that such a sentence is appropriate and reasonable.

When determining what is an appropriate sentence, section 3553(a) directs the court to "impose a sentence sufficient, but not greater than necessary" to comply with certain statutory objectives and relevant factors. <u>United States v. Foreman</u>, 436 F.3d.638 (6th Cir. 2006). Those factors are as follows:

**1. The nature and circumstances of the offense and the history and characteristics of the defendant.**

On February 18, 2005 the defendant sold a mere 5.57 grams of Crack Cocaine to a confidential witness for $250.00. The circumstances surrounding the offense while serious are consistent with that of the quintessential

4

small time street level drug dealer.  There was nothing elaborate or sophisticated about the deal.  The defendant was not part of a conspiracy nor was he involved in a large scale operation, all evidenced by the defendant's own personal involvement with and proximity to the illegal substance.

The defendant's acknowledges both his responsibility and the serious nature of the crime for which he has pled guilty.  He asks this court to consider all relevant factors in imposing a fair and just sentence.

The defendant is a 32 year old African American male. He grew up in a typical middle class family.  His parents, Paul Hicks Sr. and Rosemary Hicks raised the family consisting of 8 siblings in Dorchester Massachusetts. The defendant by all accounts lived in a good home.  Throughout his entire childhood and adult life, he received the economic, emotional, and institutional support of his family. His father, Paul Sr. is an arson investigator with the Boston Fire Department.  His mother, Rosemary is a Massachusetts State Police trooper.

The defendant in the PSR makes it clear that he loves his parents.  He is ashamed of the hurt this case has caused them.  Unlike many of his peers, his home was not one marked by domestic violence or substance abuse.

5

Accordingly, the defendant refuses to place any blame upon his parents for any of his past or present difficulties.

Both parents describe Sir Dawayne as respectful and helpful in the family home[4]. They are simply lost for an explanation, but they do attribute the source of their son's problems at least in part to "associating with the wrong crowd", and "life on the streets". The defendant admitted during the Pre-Sentence Investigation (PSI) that as he became older he along with his brothers Paul, and Dana began associating with the "wrong crowd" in the Codman Street area of Dorchester.

His best friend Christopher Perez died from gun shot wounds when they were 17. The defendant was present in the ambulance when he passed away. The defendant and his sister were both shot by an unknown suspect when he was 18 years old. The defendant certainly does not engage in hyperbole when describing the violence of his teenage environment.

The parents moved the family to Plymouth, Massachusetts when Sir Dawayne was 21 years old. This was done in part to escape the devastating impact of the Dorchester neighborhood. A neighborhood plagued by drugs

---

[4] Counsel for the defendant has attached a letter authored by Rosemary Hicks to this memorandum.

6

and violence. The parents moved the family to Brockton in 2001 where they now reside in a single family home.

Sir Dawayne has experienced his share of tragedy.  His brother Darren died in 2003 from complications due to Diabetes.  Darren's twin brother Darrel is currently suffering from the same debilitating disease.  Sir Dawayne and his brother are only seven years apart.  The death had a terrible effect on the entire family.

The defendant received his General Equivalency Diploma in 1997.  At the time of his arrest he had enrolled back into school in hopes of continuing his education.  He is articulate, intelligent, and motivated to learn.  As such, the defendant is eager to pursue any and all educational programming available to him while in the custody of the federal bureau of prisons.

According to the PSR the defendant's brothers Dana Hicks and Paul Hicks are currently serving federal prison sentences.  The influence of the streets certainly impacted the defendant in a negative way.  Although not an excuse, one cannot ignore the effect years spent surrounded by the drugs and the violence in the neighborhood has had on the defendant and his brothers.

The defendant does not blame the totality of his current situation exclusively on his teenage environment.

He places much of the responsibility and blame upon himself. Many good young African American men grow up in these neighborhoods in less than ideal conditions and go on to prosper and lead lives as law abiding members of society. However, the court cannot ignore the overwhelming evidence that too many predominately young black men from similar neighborhoods fall prey to the lure and influence of the streets, and consequently become involved in the criminal justice system.

   Sir Dawayne has a fourteen year old daughter Tatiyanna Hicks. They are extremely close. He feels a tremendous amount of guilt about the pain his prolonged imprisonment will cause her. Her presence in his life is a source of motivation for him. He desperately wants to serve his sentence and then resume his relationship with his daughter. In 1997 the defendant lost a young baby girl Tasha Barbosa to Sudden Infant Death Syndrome. He lost contact with the mother but thinks of his daughter every day. It has reinforced within him the responsibility he owes to Tatiyanna.

   Sir Dawayne acknowledges a history of substance abuse. He has a long and troubled battle with alcohol, and Marijuana abuse, and some experimentation with cocaine. The PSR notes that the defendant is willing to participate

in a substance abuse program while incarcerated with the Federal Bureau of Prisons. Such treatment would assist the defendant in the rehabilitation component of his incarceration.

This is a difficult time for the defendant and his family. His parents are committed to their son and vow to do whatever it takes to help him. He presently enjoys the continued and strong support of a vast extended family. This is a motivational factor and a source of hope and strength for the defendant. His desire is to fulfill his obligation and then reenter society as a productive law abiding member.

**2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed training or services. 18 U.S.C. § 3553(a)(2)(A-D)**

The offense here is serious and does merit a period of incarceration. Mr. Hicks takes the position that a ten (10) year period of imprisonment followed by eight (8) years of supervised release, more than adequately reflects the seriousness of the offense. This period of imprisonment is a considerable period of incarceration that

9

would satisfy the "needs" of this subsection.  In fact the court should conclude that such a sentence is more in line with the seriousness of the crime, the single distribution of a very small amount of cocaine base than is the 262 months to life sentence suggested by the advisory (emphasis added) guidelines.  The number called for in the guidelines is driven almost exclusively by his career offender status more than it is by the seriousness of the offense.  In fact the career offender provision more than doubles the minimum mandatory sentence imposed by congress in the Anti-Drug Abuse Act of 1986.  It almost triples the guideline range that will be in place if the proposed amendments to guidelines are adopted by congress.

   Ten years of imprisonment will also act as a significant deterrent to any future criminal conduct.  If the court were to impose the defendant's suggested sentence, the defendant would be 42 years old at the time of his release.  Ten years is a substantial period of time to think about and take responsibility for his past actions while providing him with the dual incentive of avoiding the same mistakes upon release.  A ten year sentence gives him the chance to make a life for himself and his daughter.  In that way, the intermediate sentence proposed by the

10

defendant actually serves more as a deterrent than that recommended by the guidelines.

Sir Dawayne is anxious to pursue all of the counseling, educational, and vocational training available to him during his period of incarceration including the anger management, parenting, and substance abuse classes. Ten years gives him more than enough time to complete all of these programs. Further incarceration beyond that serves no recognizable deterrent effect, and does nothing to address the issues raised in the PSR or in this memorandum. In fact, in its own report the sentencing commission found that there was no tangible proof that the "career offender" provision of the guidelines protected the public from the future crimes of a defendant[5].

The defendant's release from custody will be followed by a mandatory eight (8) years of supervision U.S.S.G. § 5D1.2(b). He knows that at this point in his life any future criminal misconduct is not an option. The message has been sent and received that these types of crimes are taken seriously.

**3. The kinds of sentences available.**

---

[5] <u>Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform</u> (2004).

11

Pursuant to 21 U.S.C. 841 (a) and (b) a period of imprisonment of ten years followed by a period of supervised release of eight (8) years is authorized by statute.  It also takes into account the mandatory sentence enhancements mandated under 21 U.S.C. § 841 (b)(1)(B) and 21 U.S.C. § 851.

**4.  The kinds of sentence and sentencing range established by the Sentencing Guidelines and pertinent policy statements.  18 U.S.C. § 3553(a)(4-5)**

The advisory guideline range has been calculated and addressed *supra*.

**5.  The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty to similar conduct.  18 U.S.C. § 3553 (a)(6)**

A sentence outside of the advisory guidelines will avoid the unwarranted disparity that would otherwise be created in this instance by their rigid application.  The guidelines were originally created to eliminate disparate sentences for similarly situated offenders that committed similar offenses.[6]  However, The United States Sentencing Commission has identified several key areas in which the guidelines have actually created unwarranted disparity in sentencing.

---

[6] The Sentencing Reform Act

<u>Fifteen Years of Guideline Sentencing</u>, detailed the pattern of disparity when as here the defendant is a black male charged with a drug offense. Under these circumstances, the commission found that a black defendant charged with a drug offense received a sentence 10% longer than that of his white counterpart. <u>Id</u>. Much of this can be attributed to the 100 to 1 Crack to Cocaine Ratio and the Career Offender provision contained within the guidelines. The defendant is subject to both of these sections of the guidelines.

Black males account for 81% of the offenders sentenced for crack cocaine offenses[7]. Although there is no legitimate distinction between the drugs, the average length of imprisonment for a crack cocaine offense was 119 months compared to 78 months for a powder cocaine offense. <u>Id</u>. The commission pointed out that most crack offenses are committed by low-level offenders, and that these crimes are more often reported and prosecuted in urban areas made up of mostly minority populations. They noted that it is the single largest contributor to racial disparity in sentencing. <u>Id</u>. This disparity is compounded when the court applies the "career offender" provision of the guidelines.

---

[7] USSC Sourcebook (2002)

The career offender provision U.S.S.G §4B1.1 places an offender with two prior convictions for offenses involving violence or the distribution of drugs in criminal history VI, and sets the offense level at the guideline range associated with the statutory maximum penalty for the offense.  The defendant by virtue of several state court convictions is subject to this provision. The sentencing commission found that in 2000, black males constituted 26% of the offenders sentenced under the guidelines, but an overwhelming 58% of the offenders subject to the harsh penalties of the career offender provision. Id.  The commission concluded that the career offender provision has done little to reduce recidivism. Id.  Instead, the commission found that it has widened the gap between the white majority and the black minority defendants when it comes to sentencing.

More recently the Sentencing Commission has renewed their request to Congress to do away with the 100 to 1 ratio.  In their 2007 Report to Congress:  COCAINE AND FEDERAL SENTENCING POLICY, the commission noted the 100 to 1 ratio has come under universal criticism from judges, lawyers, scholars, public officials, and citizens groups. The thrust of the report is that the ratio is intellectually indefensible.

The defendant's requested sentence of ten years imprisonment would mitigate some of the unwarranted disparity created by the career offender provisions, and would better serve the statutory objective of parity in sentencing.  When determining the sentence, the court should consider that the Anti-Drug Abuse Act of 1986 (Act) has already established a minimum mandatory component of the defendant's sentence.  This minimum mandatory provision, aimed at avoiding sentence disparities, also provides for a significantly higher penalty for Crack Cocaine offenses.

The court should also consider past treatment of a similarly situated defendant.  In, <u>United States v. James Goodwyn</u>, Case Number 1: 05 CR 10220-001 NMG the court imposed a sentence below the applicable guideline range. In that case the defendant pled guilty to the distribution of 13 grams of Cocaine Base.  The Career Offender provision of the guidelines applied to the defendant with a suggested sentence of 262-327 months imprisonment.  However, the court in an act of thoughtful judicial discretion imposed a sentence below that called for by the applicable advisory guidelines.  In imposing a sentence of 192 months the court found a strict and rigid application of the career offender provisions would have yielded an unnecessarily

15

harsh result. Here, the defendant has pled guilty to the distribution of less than half the same amount of cocaine base as the defendant in the Goodwyn case.  Further, the criminal history of the defendant in the case before the court is less than that of the defendant Goodwyn. Therefore, this defendant's recommended sentence of ten years imprisonment based on less drugs and less criminal history comports with the court's rationale in the Goodwyn case.

The goal of the federal criminal justice system is to be fair, both in perception and in reality.  In this instance, enforcement of these specific guideline provisions against the defendant would not yield such a result.  This court post Booker, has been granted the judicial authority to now impose a fair and just sentence.

## Conclusion

For all of the forgoing reasons, the defendant moves this court to impose a sentence of ten years imprisonment followed by eight years of supervised release.

By his attorney,

/s/ Joseph F. Krowski Jr.
JOSEPH F. KROWSKI JR.
30 Cottage Street
Brockton, MA. 02301
508-584-2555

Dated:  October 1, 2007

**CERTIFICATE OF SERVICE**

I, Joseph F. Krowski Jr., do hereby certify that on this 1st day of October, 2007, I served a copy of the Defendant's Sentencing Memorandum (By electronic filing and mail) upon: The Office of the United States Attorney, and The Office of the Board of Probation Department.

/s/ Joseph F. Krowski Jr.
Joseph F. Krowski Jr.

June 15, 2007

Dear Honorable Chief Justice:

When I decided to write this letter I had no idea how difficult it would be to express my pain and fear. I am a wife and mother of 5 boys and 2 girls. I have been a Massachusetts State Trooper for over 20 years. All of which I have a deep sense of integrity honor, and loyalty for.

At a time like this my heart aches and my eyes can't help but shed tears. There is no bigger conflict in me than that of law enforcement officer and mother. The reason for writing this statement is not to dispute guilt or innocense but to ask the court for mercy.

I couldn't begin to explain what its like to be in this position. I took an oath to uphold the law and now I find myself fighting for my son against the very law I uphold. In raising my children I taught them all right from wrong and instilled morals and value but somewhere along the way Sir Dwayne got lost in the world. A world of temptation and materialism.

The significant things that make up Sir Dwayne are, he is the youngest of seven. He has a smile that is warm and inviting. He is considerate of others and if you ever needed a helping hand, he would be there in an instant. He has a strong sense of family and is determined to be a good father.

He has a teenage daughter who he himself realizes, needs to learn the importance of having consequences for your actions and at the same time hopes this sentence is fair and merciful. Before this unfortunate incident Sir Dwayne was enrolled in school, trying to start a new career. I ask that the court give him the opportunity to continue on that road.

Thank you for your time and giving me the opportunity to speak on his behalf. I hope that none of you find yourself in my position, there is no greater turmoil. Also I pray that this statement falls on compassionate ears.

Sincerely,

Rosemarie Hicks

